NOT FOR PUBLICATION

| | |
|---|---|
| **PFIZER, INC, PHARMACIA & UPJOHN COMPANY AND PFIZER HEALTH AB,** | UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY |
| Plaintiff(s), | Hon. Dennis M. Cavanaugh |
| -vs- | Civil Action No. 07-174 (DMC) |
| **IVAX PHARMACEUTICALS, INC.,** | **OPINION** |
| Defendant(s). | |

## INTRODUCTION

Before the Court are (1) defendants IVAX Pharmaceuticals, Inc. and Teva Pharmaceuticals, USA Inc.'s ("defendants") application for leave to present Joseph G. Cannon, Ph.D. ("Dr. Cannon") as an expert witness at trial, and (2) plaintiffs Pfizer Inc., Pharmacia & Upjohn Company and Pfizer Health AB's (collectively "Pfizer") motion for a protective order precluding Dr. Cannon's access to Pfizer's confidential information. (Docket Entry No. 102). The Court has considered the parties' submissions in support of and in opposition to the applications. The Court addresses the matter without formal oral argument.[1] Fed.R.Civ.P.78. For the reasons that follow, defendants' application is **denied** and Pfizer's motion is **granted**.

## BACKGROUND

This is a patent infringement action by Pfizer under the Hatch-Waxman Act. The issue for trial is whether the asserted claims of the patent-in-suit, U.S. Patent No. 5,382,600 ("'600 patent"),

---

[1] As part of a routine informal case management conference on June 16, 2009, this issue was discussed by the parties at some length.

are invalid for obviousness.  The present action was instituted in January 2007.  The parties stipulated that discovery from a related case, <u>Pfizer Inc., et al. v. Teva Pharmaceuticals USA, Inc.</u>, Civil Action No. 04-1418 (DMC) ("the Teva action")[2], including expert discovery, would be used in the present action.  On February 11, 2008, the Court entered a scheduling order directing the completion of expert discovery by April 7, 2008.  The parties did not engage in any expert discovery in this case beyond what was completed in the Teva action.

The parties served expert reports in the Teva action.  Defendants served an opening expert report and reply report of John P. Long, Ph.D. on December 1, 2005 and August 31, 2006, respectively.  Dr. Long, a pharmacologist, opined that certain compounds with anticholinergic effect identified in claims 4 and 6 of the '600 patent were obvious. (Defendants' letter brief dated May 8, 2009 "Opening Letter Br." at 1).  Pfizer took Dr. Long's deposition on November 1, 2006. <u>Id.</u> at 1. Dr. Long passed away on June 10, 2007.  Defendants did not notify Pfizer of his death until February 9, 2009.  (Declaration of Sheila F. McShane ("McShane Dec."), Ex. A).

Pfizer retained Rodney A. Appell, M.D. as a testifying expert witness in the Teva action and served his report upon defendants in that action on January 27, 2006.  Dr. Appell passed away on January 19, 2009.  Pfizer informed defendants of Dr. Appell's death days after he died. (McShane Dec., Ex. B).

In February 2009, at the parties' request, the Court scheduled the Final Pretrial Conference for June 1, 2009 with trial to start on June 16, 2009.[3]  In early March 2009, defendants proposed a

---

[2]The Teva action was filed in 2004 and terminated on March 29, 2007.

[3]Pfizer actively sought the earliest possible trial date because of the impending expiration of the Hatch-Waxman 30 month stay and the desire to avoid possible injunctive proceedings in the event of an at risk launch. (See Letter from Sheila F. McShane to Court dated December 4, 2008).

stipulation ("Stipulation") to permit the admission of the reports and deposition testimony of Drs. Long and Appell at trial. Defendants suggested that the Stipulation would obviate the need for the parties to retain new experts so close to trial. (Declaration of Adam Gahtan "Gahtan Dec."at ¶2). The parties signed the Stipulation on April 21, 2009 and the undersigned entered it as a stipulated order.

On April 24, 2009, Pfizer received an email from defendants referencing the curriculum vitae and confidentiality declaration[4] ("confidentiality declaration") of Dr. Cannon. (McShane Dec., Ex. D). Dr. Cannon had executed the confidentiality declaration on February 25, 2009. Id. Pfizer objected to Dr. Cannon's access to any of its confidential documents because expert discovery was closed. (McShane Dec., Ex. E). On May 4, 2009, defendants provided Pfizer with their preliminary witness list for trial which for the first time included Dr. Cannon. (McShane Dec., Ex. F).

On May 8, 2009, defendants sought leave to present the live testimony of Dr. Cannon as an expert witness at trial--in addition to the stipulated admission into evidence of Dr. Long's expert reports.[5] Defendants also served Pfizer a purported expert report from Dr. Cannon which--according to plaintiff--contained "revisions" to Dr. Long's report.(Opposition Letter dated May 19, 2009 "Opp. Letter" at 2; Ex. 2 at 6-7). On that same day, Pfizer filed a motion for a protective order seeking to preclude Dr. Cannon's access to Pfizer's confidential information. The Court addresses both

---

The Final Pretrial Conference and trial have been rescheduled to July 30 and September 16, 2009, respectively.

[4] Dr. Cannon executed the declaration for access to Pfizer's confidential documents pursuant to the Discovery Confidentiality Order entered on June 20, 2007.

[5] Pfizer opposes defendants' application in letters to the Court dated May 19 and June 5, 2009. Defendants also submitted a reply letter dated June 2, 2009.

motions below.

## DISCUSSION

**A. Defendants' Application to have Dr. Cannon Testify as an Expert at Trial**

**(i) The parties' arguments**

Defendants request that Dr. Cannon, a medicinal chemist and a colleague of Dr. Long, be permitted to testify in place of Dr. Long. Defendants state that Dr. Cannon's new report specifically adopts and incorporates Dr. Long's reports by reference and that his testimony will be limited to the opinions previously expressed by Dr. Long. (Opening Letter Br. at 1-2). Defendants argue that Dr. Cannon's live testimony may enhance the Court's understanding of the case because he could explain issues and concepts in detail, respond to questions from the Court, and be available to present rebuttal testimony. Id. at 3.

Pfizer protests that defendants' introduction of a new expert at this time violates the Court's scheduling orders and the Federal Rules of Civil Procedure. Pfizer notes that because Dr. Cannon was first disclosed long after the April 7, 2008 scheduling deadline and after the 90 day provision of Fed. R.Civ.P. 26(a)(2)(C), the Court should preclude Dr. Cannon's trial testimony and expert report. (Opp. Letter at 3). Pfizer also argues that it would be severely prejudiced by the use of Dr. Cannon's testimony and report for several reasons. First, Pfizer argues that the portions of Dr. Long's reports that Dr. Cannon has modified are critical to defendants' invalidity assertions and that Dr. Cannon's testimony would include opinions that neither Dr. Long nor anyone else has advanced on behalf of defendants. Id. Second, Pfizer explains that not only would it now have to engage in expert discovery to probe Dr. Cannon's opinions, Pfizer would need to incorporate its findings into its pretrial papers and trial strategy which, at this late stage of the proceedings, would be extremely

4

unfair. (Opp. Letter at 3; Sur-reply Letter dated June 5, 2009 "Sur-reply" at 1). Third, Pfizer states that if Dr. Cannon was permitted to testify, Pfizer would be prejudiced if it were not afforded the same opportunity to present live expert testimony. (Sur-reply at 1). Finally, Pfizer requests that the Court evaluate defendants' application in light of "the games [d]efendants played" in delaying their disclosure of Dr. Cannon as an expert. (Opp. Letter at 1).

**(ii) <u>Analysis</u>**

The timing of defendants' disclosure of Dr. Long's death and their delay in seeking permission to name Dr. Cannon as a substitute expert is fatal to their application. Defendants failed to comply with the February 11, 2008 scheduling order and the disclosure requirements of the Federal Rules of Civil Procedure ("Rules" or "rules of procedure"). Dr. Long died in June 2007. Expert discovery in this case closed on April 7, 2008. Despite having knowledge of Dr. Long's death since June 2007, defendants failed to advise Pfizer or the Court of his passing until February 2009. Then, defendants waited until May 8, 2009,[6] nearly two years after Dr. Long's death and only five weeks before the original trial date, to seek leave to present Dr. Cannon as a testifying expert. Defendants could have proposed a replacement expert within a reasonable time following Dr. Long's death and certainly long before the close of expert discovery on April 7, 2008. No reasonable justification for defendants' delay has been provided. The untimely identification of Dr. Cannon as a proposed expert may be viewed as a "flagrant disregard" of the scheduling order and warrants denial of the relief sought. See <u>Konstantopoulos v. Westvaco Corp.</u>, 112 F.3d 710, 719 (3d Cir. 1997)(court found plaintiff flagrantly disregarded pretrial discovery orders and excluded testimony

---

[6]Defendants' May 8, 2009 Opening Letter Brief omitted the date of Dr. Long's death which occurred nearly two years earlier in June 2007.

of plaintiff's expert psychological witness where plaintiff did not disclose expert until a pretrial conference three weeks prior to trial, which was six months after plaintiff first consulted the expert and eighteen months after the close of expert discovery); Bowers v. Nat'l Collegiate Athletic Ass'n, 564 F.Supp.2d 322 (D.N.J. 2008)(exclusion of expert testimony relating to information not included in draft expert reports that were belatedly disclosed was proper discovery sanction); Exxon Corp. v. Halcon Shipping Co., Ltd. 156 F.R.D. 589, 591 (D.N.J. 1994)(expert precluded from testifying as sanction for violation of discovery order where plaintiff designated expert after discovery deadline).[7]

The Third Circuit has established four factors that the Court should balance before precluding testimony in comparable circumstances: (1) the prejudice to the party against whom the excluded witness would have testified; (2) the ability of the party to cure the prejudice; (3) the extent to which permitting the testimony would disrupt the orderly and efficient trial of the case, and (4) bad faith or willfulness in failing to comply with the Court's order. Meyers v. Pennypack Woods Home Ownership Ass'n, 559 F.2d 894, 904-05 (3d Cir. 1977), overruled on other grounds, Goodman

---

[7] Defendants also failed to comply with Rule 26 disclosure requirements. Rule 26(a)(2) provides that parties must disclose the identity of the expert and submit a written report within the time set by the Court. Red.R.Civ.P. 26(a)(2). If there is no schedule set by the Court, disclosure must be made at least 90 days prior to trial. Id. Rule 37(c)(1) provides that when a party fails to make the required disclosures, "the party is not allowed to use that information or witness to supply evidence...at trial unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1). Exclusion of Dr. Cannon is well within the Court's discretion. See Fed.R.Civ.P. 37(c)(1); see also In re TMI Litigation, 193 F.3d 613, 722 (3d Cir. 1999)(exclusion of expert evidence as sanction pursuant to Fed.R.Civ.P. 37 (b)(2)(B) for failure to comply with discovery deadlines not abuse of discretion where expert reports excluded were filed after the formal close of discovery and discovery had been open for nearly one decade).

v. Lukens Steel Co., 777 F.2d 113 (3d Cir. 1985), aff'd, 482 U.S. 656 (1987).[8] The importance of the testimony should also be considered. Konstantopoulos, 112 F.3d at 719 (citing Meyers, 559 F.2d at 904).[9] Consideration of the Meyers factors demonstrates that defendants' eleventh hour request should be denied.

Turning to the first Meyers factor, Pfizer argues that it will be prejudiced if Dr. Cannon is allowed to testify at trial. Pfizer may well be disadvantaged if it is compelled to rely solely on the report of its deceased expert, Dr. Appell, while defendants present Dr. Cannon's live testimony in addition to Dr. Long's reports. Defendants understandably worry that the naming of Dr. Cannon on the eve of trial would permit him to shape his opinions and potentially offer surprise rebuttal testimony which Pfizer would not be in a position to refute. Further, it would be unfair if defendants offered Dr. Cannon's live testimony at trial while Pfizer was relegated to relying on Dr. Appell's written report and deposition testimony. The only way to alleviate this prejudice would require the wholesale reopening of expert discovery in a complex case on the eve of trial. While it may be that live testimony is sometimes preferable at trial, this is often less so when expert testimony is involved. Indeed, expert testimony is often presented via deposition or videotaped deposition. Dr. Long's death two years prior to the original trial date simply does not warrant the last minute substitution defendants seek.

Turning to the second and third Meyers factors, allowing Dr. Cannon to intercede in this action would likely interfere with Pfizer's trial preparation and presentation of its case. Pfizer

---

[8]The Third Circuit has recognized the continuing application of Meyers, supra, to a Rule 37 exclusion analysis. In re TMI Litigation, 193 F.3d at 721 (citations omitted).

[9]The "importance of the evidence alone is insufficient to overcome Rule 26." Mercedes Benz USA LLC v. Coast Auto. Group Ltd, No. 99-3121, 2008 WL 4378294, *5 (D.N.J. Sept. 23, 2008).

7

challenges defendants' contention that the "changes Dr. Cannon made [to Dr. Long's reports] are merely a matter of word choice and his preferred chemical phraseology."(Reply Letter at 3-4). Pfizer maintains that the portions of Dr. Long's reports that Dr. Cannon has modified are critical to defendants' assertions of invalidity. (Opp. Letter at 3).[10] If defendants' application were granted, Pfizer would seek to reopen discovery in order to fully explore Dr. Cannon's opinions and to name two substitute experts. (Opp. Letter at 3; Sur-reply at 1). Pfizer would likely be prejudiced if it now had to engage in discovery regarding Dr. Cannon's report, secure rebuttal reports and incorporate its findings into its pretrial submissions only weeks before the final pretrial conference scheduled for July 30, 2009.[11] The addition of two new patent experts and the attempted scheduling of their depositions in July, on the eve of trial, would disrupt the parties' ability to prepare for trial. Parties are entitled to some certainty as they prepare for trial "and if newly designated experts...[are] permitted ...without limitation the need for discovery could be endless." Exxon, 156 F.R.D. at 591-92. Defendants had almost two years to identify a new expert and did not do so. Defendants simply have not advanced any compelling reason to justify the reopening of expert discovery. According to defendants, Dr. Cannon's testimony is a duplication of Dr. Long's opinion which will be introduced into evidence through his written reports. See Konstantopoulos, 112 F.3d at 719 (courts

---

[10]Notably, Dr. Cannon states that he expresses no opinion on Section E of Dr. Long's reply report entitled "Reproducibility and Error Analyses are Necessary to Make Conclusions or Comparisons Regarding Activity Levels" because "as a medicinal chemist...[he does] not feel qualified to opine on this subject." (Opp. Letter, Ex. 2 at 6). Because the Court denies defendants' application, the Court declines to address whether Dr. Cannon, a medicinal chemist, has the same expertise as Dr. Long, a pharmacologist, for purposes of serving as a substitute expert, a dispute which highlights the problems caused by this sort of out-of-time application.

[11]Pfizer contends that it would have to work with its own experts on rebuttals while at the same time preparing for trial. (Opp. Letter at 3).

consider the importance of the evidence to the proffering party's case).  In fact, if Dr. Cannon's "testimony will be limited to the opinions and reasons previously stated by Dr. Long" as defendants vigorously contend, then defendants should not be prejudiced at all by the denial of their application. (Opening Letter Br. at 2).

Finally, the Court considers the fourth Meyers factor of bad faith.  Pfizer requests that this Court consider the "games [d]efendants played" in disclosing Dr. Cannon. (Opp. Letter at 1). Pfizer notes that defendants informed it of Dr. Cannon's potential involvement in the case only three days after the parties entered into the Stipulation agreeing that they would both rely upon the written reports and depositions of their deceased experts; and that defendants identified Dr. Cannon as a testifying expert less than two weeks later.  Unbeknownst to Pfizer, Dr. Cannon had executed his confidentiality declaration on February 25, 2009, long before the parties entered into the Stipulation. At the least, this timing raises questions.

Adding Dr. Cannon as a testifying expert at this juncture of the litigation is precisely the type of surprise and prejudice that the Rules (and arguably the parties' Stipulation) were designed to prevent.  The prejudice to Pfizer is magnified by defendants' stated purpose of the Stipulation--to admit the expert reports of Drs. Long and Appell as direct testimony "in order to obviate the need to go out and find new experts." ("Gahtan Dec." at ¶2) While the Court discerns no concrete basis to find bad faith,[12] the inequity of the untimely disclosure of Dr. Cannon precludes the grant of leave by this Court.

---

[12]But see Exxon, 156 F.R.D. at 592 (violations of scheduling orders coupled with unsatisfactory explanations "may be characterized fairly as a willful and bad faith breach"); Mercedes Benz, 2008 WL 4378294, at *5 (court concluded that failure to disclose calculation of damages without reasonable explanation was strategic).

9

### B. **Pfizer's Motion for a Protective Order**

Pfizer filed a motion for a protective order seeking to preclude Dr. Cannon's access to Pfizer confidential information. Pfizer argues that Dr. Cannon could not serve as a testifying expert at trial because he had not been identified as a potential expert and had not offered a report prior to the close of discovery in April 2008. Pfizer therefore contends that Dr. Cannon should not be allowed access to Pfizer's confidential documents.

Defendants oppose the motion arguing that (1) defendants have complied with the Discovery Confidentiality Order and therefore Dr. Cannon may have access to Pfizer's confidential information; (2) Pfizer will not be prejudiced by disclosure of the information to Dr. Cannon, and (3) Pfizer's real reason for the motion was not to preserve confidentiality but to prevent defendants from calling Dr. Cannon as a witness at trial.

The Court has denied defendants' application for leave to present the expert testimony of Dr. Cannon at trial. Therefore, no legitimate reason for Dr. Cannon to have access to Pfizer's confidential information has been provided. Accordingly, Pfizer's motion for a protective order is granted.

### CONCLUSION

Having analyzed defendants' conduct in light of the Meyers factors, defendants' application for leave is **denied.** Pfizer's motion for a protective order is **granted**. An appropriate order accompanies this Opinion.

/s/ Mark Falk
**MARK FALK**
**United States Magistrate Judge**

Orig.: Clerk of the Court
cc: Hon. Dennis M. Cavanaugh, U.S.D.J.
 All Parties